IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No.  CR-04-94-C |
| | ) | |
| SEAN MICHAEL GILLESPIE, | ) | |
| | ) | |
| Defendant. | ) | |

GOVERNMENT'S  SUPPLEMENTAL  RESPONSE
TO  DEFENDANT'S  MOTION  FOR
JUDGMENT  OF  ACQUITTAL  AND  BRIEF  IN  SUPPORT

COMES NOW the plaintiff, United States of America, by its undersigned counsel,

Robert G. McCampbell, United States Attorney for the Western District of Oklahoma,

through Jerome A. Holmes and Scott L. Palk, Assistant United States Attorneys, and

files its Supplemental Response to the defendant Sean Michael Gillespie's Motion for

Judgment of Acquittal.

I.      INTRODUCTION

Mr. Gillespie presented the Court and the Government with his Motion on the last

day of trial, April 26, 2005.  Having only a brief period of time to review the Motion, the

Government nonetheless offered an oral response, citing legal authority.  The

Government stands by that response here.  But, for the Court's consideration, the

Government supplements its response in writing with further authorities and arguments.

For the reasons noted below, Mr. Gillespie's Motion is wholly without merit and should be denied.

II.   <u>ARGUMENT AND AUTHORITIES</u>

Mr. Gillespie moves the Court to dismiss Counts 1 and 2, arguing that the requisite nexus to interstate commerce cannot be established.  He cites several federal appellate opinions purportedly holding that the interstate commerce element of 18 U.S.C. § 844(i) cannot be satisfied by most churches, and presumably other religious buildings of worship.

There are indeed federal courts that have taken a negative view of the ability of religious buildings to meet the interstate commerce element of 844(i).  But, unfortunately for Mr. Gillespie, they are not in this Circuit.  And the principal case in the Tenth Circuit to discuss this issue, <u>United States v. Grassie</u>, 237 F.3d 1199 (10th Cir. 2001), strongly supports the idea that such buildings can form the basis for a Section 844(i) prosecution so long as they have an "active commercial connection."  <u>See</u> <u>United States v. Laton</u>, 352 F.3d 286, 299 (6th Cir. 2003) (interpreting <u>Grassie</u> as standing for this proposition, but noting the divergent views regarding churches and interstate commerce), <u>cert. denied</u>, 124 S. Ct. 2906 (2004).

Based upon the U.S. Supreme Court's seminal case in this area, <u>Jones v. United States</u>, 529 U.S. 848 (2000), this Court's instructions properly state the governing law.

2

The interstate commerce inquiry must first focus on the functions of the building. Court's Instruction No. 25.  Like other buildings, religious ones can have multiple functions - some overtly religious and others not.  See United States v. Terry, 257 F.3d 366, 369 (4th Cir. 2001).  Second, the analysis turns to whether the identified functions are directly involved in interstate commerce or, alternatively, in activities affecting interstate commerce.  Court's Instruction No. 25.  If so, any effect on commerce at all will be sufficient to satisfy this legal element.  Id.

At trial, the Government adduced evidence regarding three distinct functions of the Temple building.  The activity of each is sufficient to satisfy the statutory interstate commerce element.  Alternatively, this element is met when the functions are viewed in the aggregate and their effects combined.

1.    Temple B'nai Israel Sisterhood Gift Shop

Standing alone, the commercial activity of the Temple B'nai Israel Sisterhood gift shop supports a finding that the Temple B'nai Israel building was used in interstate commerce or in activities affecting interstate commerce.  Robin Murray, the Sisterhood's treasurer, testified about the group's activities and, more specifically, its operation of the gift shop.  She told the jury that the gift shop is located within the physical structure of the Temple building and it sells merchandise, not only to Temple congregants, but also to the general public.

3

Ms. Murray testified that the gift shop sells various kinds of Judaica, including religious tapes and clothing and serving utensils for religious celebrations.  She noted that the gift shop purchases approximately 95% of its inventory from outside of Oklahoma and that thus far this fiscal year the gift shop has spent in excess of $15,000 on inventory.  Ms. Murray testified from personal knowledge about the interstate character of these transactions because she was the one who wrote the Sisterhood's checks.

It should be beyond question that such commercial activity is sufficient to meet the statutory test.  The gift shop has interjected itself into the stream of commerce, selling its wares to the general public.  It consequently competes in the market for Judaica with other sellers, including sources over the Internet.  Moreover, the shop purchases almost all of its goods from out-of-state vendors.

The monetary amounts involved in these out-of-state transactions are far from negligible.  Using Ms. Murray's 95% figure for out-of-state purchases, in this fiscal year the gift shop has moved $14,250 across Oklahoma's borders.  There was not a hint in Ms. Murray's testimony that this magnitude of purchases was aberrational.  Indeed, as the Government recalls the testimony, Ms. Murray said the inventory of the gift shop at the close of the last fiscal year (the end of June 2004) was valued at somewhere around $33,000.  The figure suggests a pattern of significant purchases.  This activity is the

obverse of "a passive, passing, or past connection to commerce" held by the Supreme

Court in Jones to be insufficient under § 844(i).  529 U.S. at 854.  Indeed, these

significant acquisitions from out of state evidenced by the $14,250 figure were going on

in close temporal proximity to the date of the charged fire bombing.

When one need only establish "any effect at all on interstate commerce" (Court's

Jury Instruction No. 25), there can be no doubt that the magnitude of the monetary

transactions of the gift shop are sufficient to establish the requisite nexus to interstate

commerce.  As the Government recalls it, in his closing argument, Mr. Gillespie

suggested that the commercial transactions of the gift shop should be discounted

because they involve only religiously-oriented items.  Such an argument, however, is

sharply at odds with the reasoning of Grassie, where the Tenth Circuit summarily

rejected the notion that religious institutions did not have effects on interstate commerce

and that their activities were somehow by definition non-commercial.  Grassie, 237 F.3d

at 1209 & n.7; see Terry, 257 F.3d at 369 ("An activity can have both a religious aspect

and an economic one.  We cannot close our eyes to the commercial nature of an

activity solely because non-commercial considerations also underlie it.").

    2.    <u>Erna Krouch Preschool</u>

Vivian Cohen, the Director of the Erna Krouch preschool, offered significant

evidence on the interstate commerce issue.  She noted that the preschool is located

within the physical structure of the Temple building and accepts students from the general public, as well as from Temple congregants.  Further, Ms. Cohen noted the school does some advertising but gets most of its students through word of mouth.

She testified that the school charges for its preschool services and sponsored a Government exhibit addressing this point.  That exhibit - Government's Exhibit 3.1 - validates the charges for attendance, but also reflects that around the time of the fire bombing those charges were quite significant.  For example, the yearly charge for a two-year-old during 2003-2004 was $1,300.

This fact was underscored for the jury by Government's Exhibit 3.2 - the 2003-2004 preschool budget, which shows that the preschool expected to make over $118,000 of income from education-related services.   Through the preschool, the Temple Building was interjected into the stream of commercial activity.  And with only great difficulty can one gainsay that an institution with an income of over $118,000 has a significant impact on interstate commerce.  Put another way, the jury could reasonably infer from the commercial activity of the preschool that the Temple building was used in interstate commerce or engaged in commerce-affecting activities.

In Terry, the Fourth Circuit reached a similar conclusion on remarkably similar facts.  It found the operation of a day care center within the targeted church building was dispositive on the § 844(i) interstate commerce issue.  The daycare center in Terry

6

charged a significant fee ($706 per month) and apparently serviced the general public. 257 F.3d at 368-69.  The Fourth Circuit found that the daycare was "actively engaged in commercial activity by participating in the market for childcare services."  Id. at 370.

Moreover, the court dismissed the notion that the daycare did not impact interstate commerce simply because its services only took place in one North Carolina city.  It noted that the daycare center was part of a much broader market for childcare services and held that it was appropriate here in deciding the interstate commerce question to aggregate the economic effects of local commercial activities.  257 F.3d at 370-71.

Terry's reasoning is very cogent on these facts, and should lead the Court to a similar conclusion.  Like the Terry daycare, the Erna Krouch preschool charges a rather substantial fee and services the general public.  It competes in the broad market for educational services for young children.  Indeed, the preschool apparently is very successful at doing so, since it relies primarily on informal referrals to get new students. Furthermore, like the Terry court, we should not be concerned with the fact the preschool's  activities take place only in Oklahoma City.  We should focus on the aggregate economic effects of a commercial business grossing over $118,000 per year. Accordingly, based upon the activities of the Erna Krouch preschool alone, the Court could find that the Government has carried its burden of proof.

7

### 3.    Out-of-State Purchases of Temple B'nai Israel

The Temple's Administrator, Marsha Greiner, offered testimony on the Temple's purchases from out-of-state vendors.  She noted that these purchases were done regularly.  Ms. Greiner gave as an example the Temple's purchases of prayer books and other religious literature from the Central Conference of American Rabbis, which is located in New York.  Documentary exhibits were introduced into evidence reflecting such purchases.  See Govt. Ex. 3.3 (Dec. 2002 transaction for $237.50) and 3.4 (March 2003 transaction for $445.21).  Ms. Greiner also testified about the Temple's periodic purchases of religious pamphlets from Jewish Lights, a Vermont based organization. She noted that the orders ranged in value from somewhere around the $40 range to $100.

Given the low threshold for establishing an effect on interstate commerce (see Court's Instruction No. 25), even these small, regular monetary transactions with out-of-state vendors should be sufficient to meet the statutory test.  To be sure, some courts have cast doubt on whether such purchases of religious materials are enough.  See Laton, 353 F.3d at 299 n.12 (collecting cases).  But those courts are at odds with the Tenth Circuit's reasoning in Grassie - a fact Mr. Gillespie cannot escape.  Although the defendant stipulated to the interstate commerce element in Grassie, the court noted in dictum that there was ample evidence of commerce, citing several transactions akin to

those covered by Ms. Greiner's testimony.  <u>See</u> <u>Grassie</u>, 237 F.3d at 1204 (discussing

"library materials, a wide variety of office teaching equipment . . . sacerdotal

accessories, and so on" purchased by the church through interstate transactions); <u>id.</u>

1210 n.7.  Therefore, the non-Tenth Circuit authority, should not influence this Court's

analysis of the interstate commerce issue.  The Government carried its burden on this

element.

III.     <u>CONCLUSION</u>

          The Government contends that Mr. Gillespie's Motion for Judgment of Acquittal

lacks merit.  Singularly, the respective commercial dealings of the Temple B'nai Israel

Sisterhood's gift shop, the Erna Crouch Preschool, and the Temple religious

administration satisfy the statutory standard.  In all events, when viewed in the

aggregate, these three areas of commercial activity pass the interstate commerce test.

The Government has carried its burden of proof concerning interstate commerce.  Mr.

Gillespie's Motion should be denied.

                                        Respectfully submitted,

                                        ROBERT G. McCAMPBELL
                                        United States Attorney

                                        s/JEROME A. HOLMES
                                        Bar No. 17481
                                        Jerome.Holmes@usdoj.gov

s/SCOTT L. PALK
Bar No. 14841
Scott.Palk@usdoj.gov
Assistant U.S. Attorneys
210 W. Park Avenue, Suite 400
Oklahoma City, Oklahoma  73102
(405) 553-8736  (Office)
(405) 553-8887 (Fax)


## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2005, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants: Paul Antonio Lacy, Assistant Federal Public Defender.

s/Jerome A. Holmes
Assistant U.S. Attorney

10