# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| -vs- ) | No. CR-04-94-C |
| ) | |
| **SEAN MICHAEL GILLESPIE,** ) | |
| ) | |
| **Defendant.** ) | |

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S SENTENCING MEMORANDUM

Due to a retroactive, new rule of law promulgated by the United States Supreme Court in *United States v. Davis,* 139 S. Ct. 2319 (2019), this Court has vacated its September 9, 2005, Judgment against Defendant Sean Michael Gillespie, as well as his 39-year prison sentence. (Doc. 114.) In a Sentencing Memorandum filed May 13, 2020, Mr. Gillespie asks that he be sentenced to "time served" for the two counts that survive the Supreme Court's decision in *Davis*, as well as this Court's Order. (*See id.*; Doc. 120.) For the reasons set forth below, this Court should deny Mr. Gillespie's request, and sentence him to the statutory maximum of 20 years' imprisonment.

## BACKGROUND

On the night of April 1, 2004, at approximately 7:40 p.m., Mr. Gillespie gained infamy, and changed the course of history, when he terrorized the Jewish Community of Oklahoma City and spread his message of hate throughout the world. (*See, e.g.*, Doc. 14.)

Mr. Gillespie, a white supremacist, had initially planned to fire-bomb the home of a Jewish woman whose address he had found in the Oklahoma City phone book. (Doc. 112 ¶¶ 11, 29.) On his way to the woman's home, however, Mr. Gillespie became lost, and happened to drive past Temple B'Nai Israel. (*Id.* ¶ 29.) Not one to pass up a "target of opportunity," Mr. Gillespie resolved to bomb the synagogue instead. (*Id.*) Wearing a ski mask, Mr. Gillespie filmed himself throwing a Molotov cocktail through the doorway of the synagogue, an act that he later regretted. (*Id.* ¶¶ 28-29.) Had he thrown the explosive device at the roof of the synagogue, Mr. Gillespie explained to federal agents, it would have caused more damage. (*Id.* at 9.)

On May 19, 2004, a federal grand jury returned a three-count Indictment charging Mr. Gillespie with use a destructive device during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A); maliciously attempting to damage a building used in interstate commerce by means of fire and explosive, in violation of 18 U.S.C. § 844(i); and unlawful possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d). (Doc. 112 at 1; *see* Doc. 14.) On April 26, 2005, a trial jury convicted Mr. Gillespie on all three counts. (*Id.* at 3; Docs. 56-61.) At a sentencing hearing on August 30, 2005, this Court committed Mr. Gillespie to the custody of the Bureau of Prisons ("BOP") for 39 years. (Docs 69-70.) Now, due to an intervening change in Supreme Court law, Mr. Gillespie awaits resentencing.[1] (*See* Docs. 109, 114.)

---

[1] Notably, Mr. Gillespie sought commutation from the Obama Administration in 2014, which was never granted. His commutation has since been denied by President Trump.

## ARGUMENT

### I. The Court Should Reaffirm the Reasoning Set Forth in its Original Sentencing Determination.

As the United States conceded in its response to Mr. Gillespie's successive § 2255 motion, the law has indeed changed, necessitating the dismissal of Count 1 of his conviction under *United States v. Davis,* 139 S. Ct. 2319 (2019), *United States v. Salas,* 889 F.3d 681, 683-84 (10th Cir. 2018), and their progeny.  (*See* Doc. 109.)   However, the factors that led this Court to impose a 39-year sentence remain very much unaltered.

This was not, and is not, a case about vandalism to a religious building.   Instead, as then-Rabbi Barry Cohen explained at Mr. Gillespie's initial sentencing hearing, it is about the "clear psychological impact" that Mr. Gillespie's act of violence caused. Gov't Ex. 1 at 8 (Sentencing Hearing Transcript, August 30, 2005).   "[T]here was anger, there was fear as a result of this violence. . . .   [I]f this happened, then what else [wa]s coming around the corner?   And . . . the whole idea of the feeling of not being safe in [one's] own building, a building that [the Jewish community] look[ed] upon as hope, as a comfort area. . . . ."  *Id.*   As Rabbi Cohen poignantly stated, "we all know that fear has very much a life of its own."   *Id.*   And the fear that Mr. Gillespie instilled within the Jewish Community of Oklahoma City, and throughout the United States, was at the heart of the Court's sentencing determination.

---

*See* https://www.justice.gov/pardon/commutations-denied-president-donald-j-trump.

In arriving at its 39-year sentence, this Court agreed that what Mr. Gillespie did was "not an act of vandalism" but "an act of violence that goes contrary to the principles on which this nation was founded." *Id.* at 11.  In denying Mr. Gillespie's motion for a downward departure, the Court observed that his case "require[d] that [Mr. Gillespie] be removed . . . from the public as long as is possible to protect the public from other violent and criminal acts [by him], and perhaps even to protect [Mr. Gillespie] from [him]self." *Id.*  In addition, Your Honor explained, Mr. Gillespie's removal from society was necessary "to promote respect for the law, [and] to act as a deterrent to others who may be tempted to follow [his] path." *Id.*; *see* 18 U.S.C. § 3353(a).  It was for these reasons, while noting that Mr. Gillespie had been "involved in the criminal justice system many times, . . . and for a great long period of time," that this Court sentenced Mr. Gillespie to 468 months' imprisonment—the very top of what was then the advisory Guideline range.  Gov't Ex. 1 at 11.  It is for these same reasons that the Court should impose a 240-month sentence—the statutory maximum[2]—upon resentencing.  *See* 18 U.S.C. § 844(i); (Doc. 119 at 5, ¶ 22).

---

[2]   Mr. Gillespie is temporally fortunate.  Had he committed his hateful act after the Shepard-Byrd Act was passed in 2009, he might find himself facing not up to 20 years, but life, in prison.  *See* 18 U.S.C. § 249 (2009).  In addition, Mr. Gillespie arguably committed an act of domestic terrorism—an act dangerous to human life, in violation of the criminal laws of the United States, that was intended to "intimidate or coerce a civilian population." *See* 18 U.S.C. § 2331(a)(5)(A).  Though the United States did not object to the advisory Guideline range set forth in the Supplemental Presentence Investigation Report, labeling Mr. Gillespie's actions as a federal crime of terrorism would have warranted a 12-level Guideline enhancement under U.S.S.G. § 3A1.4, yielding an advisory Guideline range of 324-405 months.  *See* U.S.S.G. § 3A1.4(a); (Doc. 119 ¶ 20).

## II. Mr. Gillespie's BOP Records Demonstrate a Consistent Pattern of Violent Behavior.

Mr. Gillespie's letters to Rabbi Vered Harris, the Temple B'Nai Israel congregation, students at George Mason University, and Dylan Roof paint a picture of a changed man. (*See* Docs. 120-2 - 120-4.)    But Mr. Gillespie's BOP records tell a different story.

The United States has produced to the United States Probation Office and Defense Counsel more than 17,000 pages chronicling the more than 80 events that comprise Mr. Gillespie's lengthy disciplinary history.    (*See* Doc. 119 at 6-10; 120 at 3.)    A juxtaposition of those records with evidence of Mr. Gillespie's purported transformation is instructive and, the United States submits, illustrates the man that Mr. Gillespie truly is.[3]

---

Regardless of the charging mechanism, Mr. Gillespie's motive is the same: hatred toward, and intimidation of, the Jewish people.

[3] Indeed, this is not the first time that Mr. Gillespie's actions have diverged from his purported remorse.    Prior to his 2005 trial, Mr. Gillespie penned a letter to the Temple B'Nai Israel community, apologizing for his actions.    (Doc. 112 at 11, ¶ 38).    After he was convicted, Mr. Gillespie attempted to send another letter to Temple B'Nai Israel that was intercepted by prison staff.    The letter read:

> To the Zionist scum,
>
> This letter is to thank you for the lies in your testimony against me.    You kikes know as well as I do, that I in no way affected interstate commerce in any way.
>
> Thru generations you Talmudic scum have tried to mire the image of the beautiful Aryan People with lies, yet we resisted.    We resisted because we knew the truth behind the veil of lies that you in your control of banking and media syndicates have clouded the minds of our youth.    You will pay for every fallen comrade, Aryan women and child you have harmed.    Although I may not get to show you justice when the time for RAHOWA dawns, know this, in my place will stand tall the scores of youthful Aryan warriors of tomorrow who will do battle in that day.    They will

According to Mr. Gillespie's Sentencing Memorandum, he has corresponded with Rabbi Harris and the members of the Temple B'Nai Israel synagogue since at least 2014, when "the synagogue wrote to Mr. Gillespie and wished him 'all the very best in the ways that [he was] progressing toward kindness.'"  (Doc. 120-4 at 3.)  In June of that year, however, Mr. Gillespie hurled racial slurs at BOP staff members, swung his head in an attempt to assault a BOP officer, and threatened to spear another BOP staff member in the eyes.  (Doc. 119 at 9); Gov't Ex. 2 (Incident Reports, June 25, 2014).  In 2015, Mr. Gillespie wrote to ask for placement in the Secure Steps Toward Awareness Growth and

---

> slay you, the Talmudic beast, and all that follow or descend from that line.   On that day of the rope, I will know justice against the kikes and mongrel hordes that infest this once great Aryan society, will be done.   I will be avenged by the sword in that great day, and a new dawn of Aryan yeomanry will arise to carry on the flame of justice and cast you down into the sea, to reclaim this land which was promised to my fathers of old!
>
> Hail White Aryan Victory
>
> 6 million more!
>
> Signed this day of my blood that vengeance will be done on the day of the sword.
>
> Sean Gillespie.   Signed in blood Signed in honor.

Gov't Ex. 1 at 11-12; (Doc. 112 ¶ 38).   This letter brings to life the man who bragged to federal agents about "running over and beating up 'blacks[,]' . . . bust[ing] out the windows of an NAACP office and at a 'black church,' and 'curb-stomp[ing]' a black man, (Doc. 112 ¶ 16, 19); who "earned" his red shoelaces by kicking a homeless man in the face, (*id.* ¶ 18); who fire-bombed a synagogue to incite terror amongst the Jewish community, (*see id.* ¶ 29); and who raised a stiff-armed Nazi salute at his sentencing hearing, (Doc. 120-4 at 2.) This letter brings to life the real Sean Michael Gillespie.

Emotional Strength ("STAGES") Program, but simultaneously threatened to hurt BOP staff members when he got there. (*Compare* Doc. 120-5 *with* Doc. 119 at 8.) In fact, in yet another statement filled with racial expletives, Mr. Gillespie insisted that he had only returned to the STAGES Program in 2016 in order to "stab a [Corrections Officer]" and "throw piss" on an African American inmate. *See* Gov't Ex. 3 (Incident Report, August 25, 2016).

This behavior has continued in recent years. On February 17, 2017, and February 28, 2017, just a few weeks after he wrote a letter imploring fellow white supremacist Dylan Roof to disavow his racist beliefs, Mr. Gillespie was insolent toward BOP staff members, and threatened to stab a BOP psychologist with a spear. (*Compare* Doc. 120-4 *with* Doc. 119 at 8.) In November 2018, as Mr. Gillespie continued to correspond with students at George Mason University about renouncing his violent past, Mr. Gillespie threw an unknown liquid under his door, threatened to assault a Corrections Officer, and hurled more expletives at BOP staff members. (*Compare* Doc. 120-3 at 5-6 *with* Doc. 119 at 7) and Gov't Ex. 4 (Memorandum Regarding November 9, 2018, Incident). As the United States argued at Mr. Gillespie's initial sentencing hearing, Mr. Gillespie uses his supposed transformation for "his [own] benefit . . . whichever way the proverbial wind blows." Gov't Ex. 1 at 10. And as Mr. Gillespie's BOP records demonstrate, he is not necessarily the man he says he is.

## CONCLUSION

Mr. Gillespie is a "changed man" only when he stands to benefit from those purported changes. For the reasons set forth by this Court at Mr. Gillespie's August 2005 sentencing, as well as the reasons set forth above, this Court should sentence Mr. Gillespie to the 20-year statutory maximum for his act of hate.

Respectfully submitted,

TIMOTHY J. DOWNING
United States Attorney

*s/Julia E. Barry*
Assistant United States Attorney
California Bar Number: 268151
210 W. Park Avenue, Suite 400
Oklahoma City, Oklahoma   73102
(405) 553-8753 (Office)
(405) 553-8888 (Fax)
Julia.Barry@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2020, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Tony Lacy, Counsel for Sean Michael Gillespie.

*s/Julia E. Barry*
Assistant United States Attorney
